**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
CLEVELAND DIVISION**

| | |
|---|---|
| UNION HOME MORTGAGE CORP., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No.: 1:25-cv-1650 |
| v. ) | |
| ) | |
| NATHAN DUCE, RACHEL DUCE, AND ) | |
| AMERICAN PACIFIC MORTGAGE ) | |
| CORPORATION, ) | |
| ) | |
| Defendants. ) | |

**COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**

Plaintiff Union Home Mortgage Corp. ("Union Home"), by counsel, for its Complaint for Injunctive Relief and Damages against Defendants Nathan Duce ("Mr. Duce"), Rachel Duce ("Mrs. Duce"), and American Pacific Mortgage Corporation ("American Pacific") alleges and states as follows:

**BACKGROUND**

1.       Union Home brings this action against the Defendants for Mr. and Mrs. Duce's breaches of their respective contractual covenants and common-law duties to Union Home, and for American Pacific's procurement of those breaches.

**PARTIES**

2.       Union Home is in the business of providing homeowners and prospective home buyers with mortgage and refinance loan products.

3.       Union Home is an Ohio corporation with its principal place of business in Strongsville, Ohio.

4.      Mr. Duce is a resident and citizen of Georgia and resides in Douglas County, Georgia.

5.      Mr. Duce was employed by Union Home as Branch Manager at its Douglasville, Georgia, branch until earlier this week.

6.      Mrs. Duce is a resident and citizen of Georgia and resides in Douglas County, Georgia.

7.      Mrs. Duce was previously employed by Union Home as Loan Officer Assistant Team Captain at its Douglasville, Georgia, branch.

8.      American Pacific is a California corporation with its principal place of business in Roseville, California.

## JURISDICTION AND VENUE

9.      Paragraphs 1-8 are incorporated herein by reference as if fully restated herein.

10.     Jurisdiction is proper in federal court pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy – per Defendant – exceeds $75,000, exclusive of interest and costs.

11.     The Court also has supplemental jurisdiction over Union Home's contractual and state law claims pursuant to 28 U.S.C. § 1367.

12.     Mr. Duce's employee agreement with Union Home ("Mr. Duce's Agreement") states that any claim for breach of restrictive covenants and/or the unauthorized use and/or disclosure of information "shall be filed in a state or federal court in Ohio" and the parties "consent to personal jurisdiction in such a court and waive any right to seek a transfer of venue or to assert forum non-conveniens." (Mr. Duce's Agreement, § 18.) A true and accurate copy of Mr. Duce's Agreement is attached hereto as Exhibit A.

13.     Mrs. Duce's employee agreement with Union Home ("Mrs. Duce's Agreement") states that any claim for breach of restrictive covenants and/or the unauthorized use and/or disclosure of information "shall be filed in a state or federal court in Ohio" and the parties "consent to personal jurisdiction in such a court and waive any right to seek a transfer of venue or to assert forum non-conveniens." (Mrs. Duce's Agreement, § 17.) A true and accurate copy of Mrs. Duce's Agreement is attached hereto as Exhibit B.

14.     The choice of law provision in the Mr. Duce's and Mrs. Duce's Agreements identifies Ohio law as governing the contractual claims at issue in this matter. (Ex. A, § 18; Ex. B, § 17).

15.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because the cause of action asserted herein, or some part thereof, arose in this district, and because Mr. Duce and Mrs. Duce agreed to personal jurisdiction in Ohio and that all disputes pertaining to their respective employee agreements would be filed in state or federal courts in Ohio.

16.     The Court has jurisdiction to hear this case and venue is proper in this Court.

## FACTUAL BACKGROUND

### Mr. Duce's Employment with and Contractual Obligations to Union Home

17.     Paragraphs 1-16 are incorporated herein by reference as if fully restated herein.

18.     On or about November 13, 2023, Mr. Duce was hired by Union Home and Mr. Duce and Union Home entered into Mr. Duce's Agreement, pursuant to which Mr. Duce would serve as Branch Manager and for Union Home at its Douglasville, Georgia, branch. (Ex. A).

19.     Mr. Duce's duties as Branch Manager included building a referral network through marketing and self-sourcing business to generate and originate loans. In addition, Mr. Duce was

responsible for hiring, training and directing the retail sales team in order to achieve growth and production goals while operating within Union Home's specific policies and procedures.

20.     As a Branch Manager, Mr. Duce acquired confidential, proprietary, and trade secret information regarding, among other things, Union Home's customers, prospective customers, and referral sources, as well as Union Home's sales and marketing strategies, lending practices, and risk tolerances.

21.     Union Home takes reasonable measures to keep this information secret and out of the hands of its competitors. Union Home does so, for example, by requiring employees (such as Mr. and Mrs. Duce) to sign confidentiality agreements, password protecting its electronic resources, maintaining policies dictating strict information security, and training employees on the importance of information security.

22.     As a Branch Manager, Mr. Duce was given access to and was in a position of trust with regard to the goodwill between Union Home and its customers, prospective customers, and referral sources.

23.     Union Home invests significant time, effort, and resources into recruiting, training, and retaining its branch managers, loan officers, and support staff.

24.     In Mr. Duce's Agreement, he agreed that he

will not engage in Competitive Activity on behalf of a Competitive Entity in the Restricted Area during the Restricted Period. For purposes of this Agreement, the "Restricted Period" shall be the period between the date this Agreement is executed and November 13, 2025; the "Restricted Area" shall mean any state in which Employee is legally able to originate or broker mortgages and has done so on behalf of the Company in the thirty-six (36) months preceding the termination of Employee's employment with the Company; a "Competitive Entity" shall be any entity that competes with the Company in the home mortgage banking or brokering business; and "Competitive Activity" shall be acting in the same or similar capacity in which Employee worked for the Company and shall include, but not be limited to performing the functions of a loan officer, such as by, directly or indirectly, originating or brokering mortgages for real estate located in the Restricted Area.

(Ex. A, § 6).

25.     Mr. Duce agreed not to directly or indirectly use, disclose, divulge, reveal, report, publish, or transfer, for any purpose whatsoever, any of Union Home's Confidential Information. (*Id.*, § 10).

26.     Confidential Information is defined, in part, as "confidential or proprietary information or trade secrets of [Union Home], including, but not limited to, written or electronic information: (i) disclosed to [Mr. Duce] or known by [Mr. Duce] as a result of his . . . employment, (ii) which is not generally known, and (iii) which relates to or concerns [UHM's] business, technology, information systems, computer programs, software, customers, prospective customers, referral sources, pipelines, customer relationship management databases, suppliers, vendors, sales, marketing or finances," among other things. (*Id.*)

27.     Mr. Duce agreed that, during the Restricted Period and for one year thereafter, he would not, directly or indirectly, solicit or divert (or attempt to solicit or divert) or accept competitive business from any customer or identified prospective customer of Union Home: (i) with whom Mr. Duce had contact; or (ii) about whom Mr. Duce obtained or had access to Confidential Information. (*Id.*, § 7).

28.     Furthermore, in Mr. Duce's Agreement, he agreed

not to use any electronic resources of [Union Home] for any business purpose other than [Union Home]-approved business. Such electronic resources include, but are not limited to: devices, networks, email accounts, cloud storage, apps and software provided or made accessible by [Union Home]. Furthermore, [Union Home] agrees to refrain from using any devices, networks, email accounts, cloud storage, apps and software that have not been provided, made accessible, or specifically approved by [Union Home] for [Union Home] business. By way of example, [Mr. Duce] agrees not to send information regarding [Union Home's] customers or prospective customers to an external email account or store such information on a personal cloud storage account. This provision is in addition to and not in lieu of [Union Home] policies on this subject.

(*Id.*, § 23).

29.     Mr. Duce also agreed "not to accept or continue in any outside job, consulting work, directorship, or employment that may conflict with [his] duties and responsibilities to [Union Home], including the duty of loyalty," without Union Home's written approval. (*Id.*, § 13.)

30.     Mr. Duce's Agreement further requires him to "make the terms and conditions of the covenants . . . known to any Competitive Entity with which [he] becomes associated during the Restrictive Period." (*Id.*, § 20.)

31.     Mr. Duce agreed that any violation of these covenants would cause Union Home irreparable harm and, as a result, specifically consented to the issuance of a restraining order and/or an injunction by a court of competent jurisdiction. (*Id.*, § 17).

32.     Further, Mr. Duce agreed that he "shall be liable for any attorneys' fees expended by [Union Home] to enforce" Mr. Duce's Agreement. (*Id.*).

33.     Mr. Duce was a trusted Union Home employee who was given access to the goodwill Union Home has with its customers, prospective customers, and referral sources, as well as Union Home's confidential and trade secret information, including confidential information about Union Home's customers, prospective customers, and referral sources.

34.     Mr. Duce's Agreement is a binding and enforceable contract between Union Home and Mr. Duce.

35.     Union Home performed its material obligations under Mr. Duce's Agreement.

36.     Mr. Duce owes and continues to owe legal and contractual obligations to Union Home pursuant to Mr. Duce's Agreement.

*Mrs. Duce's Employment with and Contractual Obligations to Union Home*

37.     On or about November 13, 2023, Mrs. Duce was hired by Union Home, and she and Union Home entered into Mrs. Duce's Agreement, pursuant to which Mr. Duce would serve as Loan Office Assistant Team Captain and for Union Home at its Douglasville, Georgia, branch. (Ex. B).

38.     Mrs. Duce's duties as Loan Officer Assistant Team Captain included working closely with Loan Officers and the Branch Manager, Mr. Duce, to assist customers with application and loan documents.

39.     As a Loan Officer Assistant Team Captain, Mrs. Duce acquired confidential, proprietary, and trade secret information regarding, among other things, Union Home's customers, prospective customers, and referral sources, as well as Union Home's sales and marketing strategies, lending practices, and risk tolerances.

40.     As a Loan Officer Assistant Team Captain, Mrs. Duce was given access to and was in a position of trust with regard to the goodwill between Union Home and its customers, prospective customers, and referral sources.

41.     Mrs. Duce agreed not to directly or indirectly use, disclose, divulge, reveal, report, publish, or transfer, for any purpose whatsoever, any of Union Home's Confidential Information. (*Id.*, § 9).

42.     Confidential Information is defined, in part, as "confidential or proprietary information or trade secrets of [Union Home], including, but not limited to, written or electronic information: (i) disclosed to Mrs. Duce or known by Mrs. Duce as a result of . . . her employment, (ii) which is not generally known, and (iii) which relates to or concerns [Union Home's] customers, prospective customers, referral sources, personnel, pipelines, customer relationship management

databases, business, technology, information systems, computer programs, software, suppliers, vendors, sales, marketing or finances," among other things. (*Id.*)

43.     Mrs. Duce agreed that, during the Restricted Period and for one year thereafter, she would not, directly or indirectly, solicit or divert (or attempt to solicit or divert) or accept competitive business from any customer or identified prospective customer of Union Home: (i) with whom Mrs. Duce had contact; or (ii) about whom Mrs. Duce obtained or had access to Confidential Information. (*Id.*, § 5).

44.     Furthermore, in Mrs. Duce's Agreement, she agreed

not to use any electronic resources of [Union Home] for any business purpose other than [Union Home]-approved business. Such electronic resources include, but are not limited to: devices, networks, email accounts, cloud storage, apps and software provided or made accessible by [Union Home]. Furthermore, [Mrs. Duce] agrees to refrain from using any devices, networks, email accounts, cloud storage, apps and software that have not been provided, made accessible, or specifically approved by [Union Home] for [Union Home] business. By way of example, [Mrs. Duce] agrees not to send information regarding [Union Home's] customers or prospective customers to an external email account, store such information on a personal cloud storage account, or download such information to a flash or external hard drive. This provision is in addition to and not in lieu of [Union Home] policies on this subject.

 (*Id.*, § 22).

45.     Mrs. Duce's Agreement further requires her to "make the terms and conditions of the covenants . . . known to any Competitive Entity with which [she] becomes associated during the Restrictive Period." (*Id.*, § 19.)

46.     Mrs. Duce also agreed that any violation of these covenants would cause Union Home irreparable harm and, as a result, specifically consented to the issuance of a restraining order and/or an injunction by a court of competent jurisdiction. (*Id.*, § 16).

47.     Further, Mrs. Duce agreed that she "shall be liable for any attorneys' fees expended by [Union Home] to enforce" Mrs. Duce's Agreement. (*Id.*).

48. Mrs. Duce was a trusted Union Home employee who was given access to the goodwill Union Home has with its customers, prospective customers, and referral sources, as well as Union Home's confidential and trade secret information, including confidential information about Union Home's customers, prospective customers, and referral sources.

49. Mrs. Duce's Agreement is a binding and enforceable contract between Union Home and Mrs. Duce.

50. Union Home performed its material obligations under Mrs. Duce's Agreement.

51. Mrs. Duce owes and continues to owe legal and contractual obligations to Union Home pursuant to Mrs. Duce's Agreement.

***Mr. and Mrs. Duce Breach Their Contractual Obligations to Union Home***

52. Mr. Duce and Mrs. Duce are married, and they were married when they both began working for Union Home in November 2023.

53. While working for Union Home, Mr. Duce was a licensed mortgage loan originator and regularly serviced borrowers and closed loans on behalf of Union Home.

54. Mrs. Duce was also a licensed mortgage loan originator when she worked for Union Home, and she supported Mr. Duce in his role.

55. During Mrs. Duce's tenure as a Loan Officer Assistant Team Director for Union Home, she did not close any loans.

56. On or about May 1, 2025, Mrs. Duce resigned from her Union Home employment.

57. On or about August 4, 2025, Mr. Duce's employment with Union Home was terminated as a result of Mr. Duce's actions described in this Complaint.

58. Mrs. Duce now works for American Pacific.

59.     American Pacific is a direct competitor of Union Home that competes with Union Home in and around Douglasville, Georgia, among other places.

60.     American Pacific's website lists Mrs. Duce as a Loan Advisor for its Dallas, Georgia, branch and provides her NMLS ID.[1]

61.     Union Home's Douglasville, Georgia, branch is approximately 17 miles from American Pacific's Dallas, Georgia, branch.

62.     Between January 2016 and July 2025, the only loans that Mrs. Duce has closed were for American Pacific in July 2025.

63.     Mrs. Duce is now competing with Union Home in the same market in which she worked for Union Home and well within 100 miles of Union Home's Douglasville branch.

64.     The total dollar amount for the loans Mrs. Duce has closed for American Pacific is hundreds of thousands of dollars.

65.     After Mrs. Duce's departure from Union Home, Mr. Duce's production—the number and volume of loans closed—for Union Home decreased.

66.     Union Home's review of Mr. Duce's Union Home email account revealed that Mr. Duce was sending Confidential Information to both his and Mrs. Duce's personal email after Mrs. Duce left Union Home:

    a.      Mr. Duce forwarded a sales contract dated July 8, 2025, to his personal email. However, the sales contract was not recorded in Union Home's Encompass system.

    b.      Mr. Duce forward a prospective customer's business income tax return and banking statement from his Union Home email to his personal email.

---

[1] https://www.apmortgage.com/rachel-duce

c.      Mr. Duce emailed a title request for the 7/8/25 sales contract to Mrs. Duce's personal email.

67.    Mr. Duce's Agreement prohibited him from sending information about Union Home's "customers or prospective customers to an external email account." (Ex. A, § 23.) Yet it appears that Mr. Duce began sending Union Home customer and prospective customer data to both his and Mrs. Duce's personal email accounts after Mrs. Duce left Union Home.

68.    The information that Mr. Duce improperly sent to external email accounts is precisely the type of confidential and proprietary information needed to facilitate the transfer of Union Home customers, prospective customers, and referral sources to a competitor.

69.    In fact, Mr. Duce, using Union Home's Encompass system, processed a pre-approval for a customer, but did not close the loan. Rather, the customer's business was transferred from Union Home to American Pacific, and Mrs. Duce closed the loan in July 2025 at American Pacific.

70.    Both Mr. and Mrs. Duce's Agreements specifically provide that customer information is confidential and is not to be used for any purpose other than Union Home's business purposes, and explicitly bar the use of personal email accounts to convey this information. (Ex. A, §§ 10, 23; Ex. B, §§ 9, 22.)

71.    There was no legitimate Union Home business purpose for Mr. Duce to have sent Union Home customer information to his or Mrs. Duce's personal email accounts.

72.    There was no legitimate Union Home business purpose for Mrs. Duce to receive Union Home customer information to her personal email account, especially when she worked for American Pacific.

73.     Union Home believes that Mr. and Mrs. Duce are using Union Home's confidential information to close loans or attempt to close loans on behalf of American Pacific, Union Home's direct competitor.

***American Pacific's Knowledge of Mr. and Mrs. Duce's Misconduct***

74.     American Pacific is Mrs. Duce's current employer.

75.     American Pacific has knowledge of Mr. Duce's Agreement and Mrs. Duce's Agreement, including the covenants owed to Union Home, due to Mrs. Duce's employment, because Mr. and Mrs. Duce agreed to disclose their respective Agreement's terms and conditions to any Competitive Entity with which they became associated during the Restricted Period, and because American Pacific is engaged in active litigation involving Union Home's restrictive covenants and numerous former Union Home employees that American Pacific encouraged or permitted to violate their contractual obligations to Union Home for American Pacific's benefit.

76.     American Pacific has benefited from Mrs. Duce closing one or more loans for a prospective Union Home customer about which Mr. Duce had Confidential Information.

<u>**COUNT I:**</u>
**BREACH OF COVENANT NOT TO COMPETE**
**(Against Mr. Duce)**

77.     Paragraphs 1-76 are incorporated herein by reference as if fully restated.

78.     Mr. Duce's Agreement is a binding and enforceable contract, under which Union Home has fully performed.

79.     Under Mr. Duce's Agreement, Mr. Duce is restricted from, directly *or indirectly*, competing with Union Home in any state in which he is legally able to originate or broker mortgages and in which he has recently done so on behalf of Union Home, until November 13, 2025. (Ex. A, § 6).

80.    Mr. Duce breached the covenant not to compete in Mr. Duce's Agreement when he sent Union Home customer information to Mrs. Duce and Mrs. Duce originated loans using that information, within 100 miles of Union Home's Douglasville, Georgia, branch.

81.    79.    On information and belief, Mr. Duce breached the covenant not to compete in Mr. Duce's Agreement when he diverted one or more customers with whom he had developed goodwill on behalf of Union Home to Mrs. Duce and Mrs. Duce originated a loan for that customer, within 100 miles of Union Home's Douglasville, Georgia, branch.

82.    Mr. Duce's breach of the covenant not to compete in his Agreement has caused and will, unless restrained, continue to cause immediate and irreparable injury, loss, and damage to Union Home in an amount that cannot be precisely calculated, as agreed to by Mr. Duce in his Agreement.

### COUNT II:
### BREACH OF CONTRACTUAL DUTY OF LOYALTY
### (Against Mr. Duce)

83.    Paragraphs 1-82 are incorporated herein by reference as if fully restated.

84.    Mr. Duce owed a contractual duty of loyalty to Union Home as specified in his Agreement.

85.    While employed by Union Home, Mr. Duce was required to put forth his best efforts on behalf of Union Home. Mr. Duce failed to do so when he sent Union Home's confidential customer information to his and Mrs. Duce's personal email accounts.

86.    Mr. Duce's actions breached his contractual duty of loyalty to Union Home.

87.    Mr. Duce's breach of his contractual duty of loyalty pursuant to his Agreement have caused injury, loss, and damage to Union Home and continuation of these breaches will result in immediate and irreparable injury, loss, and damage to Union Home.

## COUNT III:
## BREACH OF COMMON LAW DUTY OF LOYALTY
### (Against Mr. Duce)

88.     Paragraphs 1-87 are incorporated herein by reference as if fully restated herein.

89.     Mr. Duce owed a common law duty of loyalty to Union Home.

90.     While employed by Union Home, Mr. Duce was required to put forth his best efforts on behalf of Union Home. Mr. Duce failed to do so when he sent Union Home's confidential customer information to his and Mrs. Duce's personal email accounts.

91.     Mr. Duce's actions breached his common law duty of loyalty to Union Home.

92.     Mr. Duce's breach of his common law duty of loyalty have caused injury, loss, and damage to Union Home.

## COUNT IV:
## BREACH OF CONTRACTUAL DUTY OF CONFIDENTIALITY
### (Against Mr. Duce)

93.     Paragraphs 1-92 are incorporated herein by reference as if fully restated herein.

94.     Since Mrs. Duce's departure from Union Home, Mr. Duce has sent Union Home's confidential customer information to his and Mrs. Duce's personal email accounts.

95.     On information and belief, Mr. Duce continues to have access to one or more of these accounts containing Union Home's Confidential Information.

96.     On information and belief, Mr. Duce has and/or intends to use or disclose Union Home's confidential information to Union Home's detriment.

97.     Mr. Duce's actions breached his contractual confidentiality covenant and obligations to Union Home, as reflected in Paragraph 10 of his Agreement wherein he agreed not to use Union Home's confidential information for any purpose other than on behalf of Union

Home, and further, agreed to not disclose, divulge, reveal, report, publish or transfer said information for any purpose whatsoever.

98. Mr. Duce's breach of his confidentiality obligations pursuant to his Agreement has caused and will continue to cause injury, loss, and damage to Union Home and continuation of these breaches will result, unless restrained, in immediate and irreparable injury, loss, and damage to Union Home.

**COUNT V:**
**BREACH OF CONTRACTUAL DUTY CONCERNING USE OF UNION HOME'S**
**ELECTRONIC RESOURCES**
**(Against Mr. Duce)**

99. Paragraphs 1-98 are incorporated herein by reference as if fully restated herein.

100. Since Mrs. Duce's departure from Union Home, Mr. Duce has sent Union Home's confidential customer information to his and Mrs. Duce's personal email accounts.

101. On information and belief, Mr. Duce continues to have access to one or more of these accounts containing Union Home's confidential information.

102. On information and belief, Mr. Duce has and/or intends to use or disclose Union Home's confidential information to Union Home's detriment.

103. Mr. Duce's actions breached his contractual covenant and obligations to Union Home concerning use of electronic resources, as reflected in Paragraph 23 of his Agreement wherein he agreed not to use any Union Home electronic resources for any business purpose other than Union Home-approved business, and also to refrain from the use of, and sending of customer information to, external email accounts.

104. Mr. Duce's breach of the electronic resources covenant pursuant to his Agreement has caused and will continue to cause injury, loss, and damage to Union Home and continuation

of these breaches will result, unless restrained, in immediate and irreparable injury, loss, and damage to Union Home.

## COUNT VI:
## BREACH OF CONTRACTUAL DUTY REGARDING NON-SOLICITATION OF CUSTOMERS
### (Against Mr. Duce)

105.    Paragraphs 1-104 are incorporated herein by reference as if fully restated herein.

106.    Since Mrs. Duce's departure from Union Home, Mr. Duce has directly or indirectly accepted business on behalf of American Pacific or has directly or indirectly solicited or diverted, customers and prospective customers of Union Home with whom Mr. Duce had contact, or about which he obtained or had access to Union Home Confidential Information, in conjunction with his Union Home employment.

107.    Mr. Duce's actions breached the Limited Non-Solicitation of Customers provision in Paragraph 7 of his Agreement.

108.    Mr. Duce's breach this covenant under the Agreement has caused and will continue to cause injury, loss, and damage to Union Home and continuation of these breaches will result, unless restrained, in immediate and irreparable injury, loss, and damage to Union Home.

## COUNT VII:
## BREACH OF CONTRACTUAL DUTY REGARDING NON-SOLICITATION OF CUSTOMERS
### (Against Mrs. Duce)

109.    Paragraphs 1-108 are incorporated herein by reference as if fully restated herein.

110.    Since becoming an employee of American Pacific, Mrs. Duce has directly or indirectly accepted business on behalf of American Pacific, or has directly or indirectly solicited or diverted, customers and prospective customers of Union Home with whom Mrs. Duce had

contact in conjunction with her Union Home employment, or about which she obtained or had access to Union Home Confidential Information.

111.    Mrs. Duce's actions breached the Limited Non-Solicitation of Customers provision in Paragraph 5 of her Agreement.

112.    Mrs. Duce's breach this covenant under her Agreement has caused and will continue to cause injury, loss, and damage to Union Home and continuation of these breaches will result, unless restrained, in immediate and irreparable injury, loss, and damage to Union Home.

**<u>COUNT VIII:</u>**
**TORTIOUS INTERFERENCE WITH CONTRACT**
**(Against American Pacific as to Mr. Duce)**

113.    Paragraphs 1-112 are incorporated herein by reference as if fully restated herein.

114.    Mr. Duce's Agreement is a valid contract between Union Home and Mr. Duce.

115.    American Pacific knew of Mr. Duce's Agreement, including the covenants owed to Union Home, due to Mrs. Duce's employment, because Mr. and Mrs. Duce agreed to disclose their respective Agreement's terms and conditions to any Competitive Entity with which they became associated during the Restricted Period, and because American Pacific is engaged in active litigation involving Union Home's restrictive covenants and numerous former Union Home employees that American Pacific encouraged or permitted to violate their contractual obligations to Union Home for American Pacific's benefit.

116.    Despite that knowledge, upon information and belief, American Pacific, intentionally and without justification procured and facilitated Mr. Duce's breaches of his Agreement by, among other conduct, allowing Mrs. Duce to originate and close loans using Union Home's Confidential Information and goodwill that Mr. Duce transferred to Mrs. Duce.

117.     American Pacific's tortious interference with Mr. Duce's Agreement has caused, and will continue to cause, directly and proximately damages to Union Home in an amount that cannot be precisely calculated, and has caused irreparable harm to Union Home's goodwill with its customers, prospective customers, and referral sources that cannot be compensated by an award of monetary damages alone.

### COUNT IX:
### TORTIOUS INTERFERENCE WITH CONTRACT
### (Against American Pacific as to Mrs. Duce)

118.     Paragraphs 1-117 are incorporated herein by reference as if fully restated herein.

119.     Mrs. Duce's Agreement is a valid contract between Union Home and Mr. Duce.

120.     American Pacific knew of Mrs. Duce's Agreement, including the covenants owed to Union Home, due to Mrs. Duce's employment, because Mr. and Mrs. Duce agreed to disclose their respective Agreement's terms and conditions to any Competitive Entity with which they became associated during the Restricted Period, and because American Pacific is engaged in active litigation involving Union Home's restrictive covenants and numerous former Union Home employees that American Pacific encouraged or permitted to violate their contractual obligations to Union Home for American Pacific's benefit.

121.     Despite that knowledge, upon information and belief, American Pacific, intentionally and without justification procured and facilitated Mrs. Duce's breaches of her Agreement by, among other conduct, allowing Mrs. Duce to originate and close loans for customers with whom Mrs. Duce had contact in conjunction with her Union Home employment, or about which she obtained or had access to Union Home Confidential Information.

122.     American Pacific's tortious interference with Mrs. Duce's Agreement has caused, and will continue to cause, directly and proximately damages to Union Home in an amount that

cannot be precisely calculated, and has caused irreparable harm to Union Home's goodwill with its customers, prospective customers, and referral sources that cannot be compensated by an award of monetary damages alone.

## COUNT X:
### TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIP
### (Against American Pacific)

123.    Paragraphs 1-122 are incorporated herein by reference as if fully restated herein.

124.    Union Home had and has a reasonable expectation of continuing and expanding its business relationships with customers, prospective customers, and referral sources.

125.    Union Home had and has a reasonable expectation that the customers, prospective customers, and referral sources Mr. and Mrs. Duce developed or serviced for Union Home would continue utilizing Union Home for their services after the end of Mrs. Duce's employment with Union Home.

126.    At all relevant times, the Defendants had knowledge of Union Home's existing and prospective expectations of business relationships from continuing and expanding the customer, prospective customer, and referral source relationships that Union Home employed Mr. and Mrs. Duce to help develop for Union Home.

127.    Upon information and belief, American Pacific intentionally interfered with USI's business relationships by, among other things, tortuously interfering with, and unjustly inducing, aiding, and abetting Mr. and Mrs. Duce's breaches of their contractual and common law duties owed to Union Home.

128.    In the absence of American Pacific's wrongful interference, it is reasonably probable that Union Home would have continued its existing and prospective business relationships.

129.    American Pacific's tortious interference with Union Home's business relationships has, and will continue to, directly and proximately caused damages to Union Home in an amount that cannot be precisely calculated, and has caused and has caused irreparable harm to Union Home's goodwill with its customers, prospective customers, and referral sources that cannot be compensated by an award of monetary damages alone.

## PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

130.    Paragraphs 1-129 are incorporated herein by reference as if fully restated herein.

131.    As a direct and proximate result of the Defendants' conduct, Union Home has suffered, and will continue to suffer, irreparable harm in the loss of business opportunities, as well as harm to its goodwill and confidential information in an amount that cannot be fully, completely, and adequately remedied at law.

132.    In Mr. and Mrs. Duce's Agreements, they expressly acknowledged and agreed that a remedy at law for any breach or threatened breach of the provisions of their respective employee agreements would be inadequate, thereby warranting issuance of injunctive relief. (Ex. A, § 17; Ex. B, § 16.)

133.    Mr. and Mrs. Duce have and continue to willfully violate their Agreements with Union Home, including by Mr. Duce sending Union Home's confidential customer information to his and Mrs. Duce's personal email accounts, and Mrs. Duce originating and closing loans using that information for the benefit of American Pacific.

134.    Without injunctive relief against the Defendants, *and all those in active concert or participation with them*, they will continue to violate their restrictive covenants, thereby causing Union Home immediate and irreparable harm. In contrast, no harm will accrue to the Defendants

by entry of injunctive relief as Mr. and Mrs. Duce never had the right to violate their obligations to Union Home, and American Pacific never had the right to procure such violations.

135.    Injunctive relief is appropriate because protection and maintenance of Union Home's confidential and proprietary information, and protection of its goodwill is a vital and legitimate business concern. In the absence of injunctive relief, it is highly unlikely that Union Home will have the ability to precisely calculate the extent of the harm caused by the Defendants' actions.

136.    The public interest will not be harmed if an injunction is granted.

137.    Given the Defendants' willful and deliberate violations of the obligations in Mr. and Mrs. Duce's Agreements, any bond required to be posted by Union Home should be *de minimis.*

WHEREFORE, Union Home respectfully requests that the Court grant the following relief:

a.    Issue a preliminary and then permanent injunction against the Defendants *and all those in active concert or participation with them* requiring specific performance of the terms and conditions of Mr. and Mrs. Duce's Agreements, prohibiting Mr. Duce and Mrs. Duce from violating the restrictive covenants in their respective Agreements, and prohibiting American Pacific from directly or indirectly interfering with Mr. and Mrs. Duce's continuing contractual obligations to Union Home;

b.    Enter judgment in favor of Union Home and against the Defendants on all counts in an amount to be determined at trial and to pay damages to Union Home, including, but not limited to, compensatory and punitive damages, costs, interest, and reasonable attorneys' fees as provided for by the Agreement, applicable statutes, and common law;

c.      Grant all other relief the Court deems just and proper in the circumstances.

Dated: <u>August 6, 2025</u>.          Respectfully submitted,

**BARNES & THORNBURG LLP**

<u>/s/ Jason T. Clagg</u>
Jason T. Clagg, Ohio Atty. No. 97303
Cody D. Woods, Ohio Atty. No. 103642
888 S. Harrison St., Suite 600
Fort Wayne, Indiana 46802
Phone: (260) 423-9440
Fax: (260) 424-8316
jason.clagg@btlaw.com
cwoods@btlaw.com

*Attorneys for Plaintiff*
*Union Home Mortgage Corp.*